IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WENDY RIEDI, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| | : | |
| GEICO CASUALTY COMPANY, | : | NO. 16-6139 |
| | : | |
| Defendant. | : | |

## **M E M O R A N D U M**

STENGEL, J.                                                                                                             April 10, 2017

### I.    INTRODUCTION

This case arises out of a car accident involving Wendy Riedi and her son Cody Chidsey. Ms. Riedi and Mr. Chidsey, the plaintiffs, filed a complaint against GEICO Casualty Company after GEICO refused to pay them uninsured motorist ("UIM") benefits. GEICO filed a motion to dismiss parts of the complaint. I will grant the motion to dismiss.

### II.    BACKGROUND

On June 28, 2016, Cody Chidsey purchased a 2010 Dodge Challenger from a car dealership in Walnutport, Pennsylvania. Before picking up the car, Cody and his mother, Wendy Riedi, contacted GEICO Casualty Company in an attempt to insure the Dodge Challenger. A GEICO representative told Cody and his mother that their insurance quote would be stored electronically. The GEICO representative also told them to contact GEICO once they obtained the VIN number for the new Dodge Challenger.

1

After purchasing the Dodge Challenger, Cody and his mother (with Cody driving) were travelling along Airport Road in East Allen Township, Pennsylvania. When they came to the intersection of Airport Road and West Main Boulevard, their car was struck by another car. The car that struck them was not insured.

Cody and his mother allege the accident was caused solely by the negligence of the other driver who hit them. Both Cody and his mother suffered injuries as a result of the accident. The Dodge Challenger suffered property damage.

After the accident, Cody and his mother notified GEICO of their intention to pursue UIM benefits. They claim they fully complied with all the terms and conditions required by the GEICO insurance policy. Cody and his mother seek UIM benefits and property damage benefits in the amount of the policy limits. GEICO has refused to pay Cody or his mother UIM benefits or property damage benefits.

Cody and his mother initiated this action by filing a complaint against GEICO in the Court of Common Pleas of Philadelphia County. Thereafter, GEICO removed the case to this Court based upon diversity of citizenship jurisdiction. The complaint sets forth several claims against GEICO: (i) breach of contract for bodily injury and property damage; (ii) bad faith pursuant to 42 Pa. C.S. § 8371; (iii) breach of contract for failure to procure insurance; and (iv) negligence for failure to procure insurance.

## III. LEGAL STANDARD

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Subsequently, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Thus, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

3

The basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## IV. DISCUSSION

GEICO argues the plaintiffs have failed to state a bad faith claim. GEICO also moves to dismiss plaintiffs' failure to procure insurance claims.[1]

### A. *Bad Faith*

Plaintiffs have failed to state a plausible bad faith claim. Accordingly, I will grant GEICO's motion to dismiss each plaintiff's bad faith claim.

A federal court sitting in diversity must apply the forum state's substantive law. Hunt v. U.S. Tobacco Co., 538 F.3d 217, 220 (3d Cir. 2008). Here, the parties agree that Pennsylvania law applies to the bad faith claims.

---

[1] Specifically, plaintiffs bring a breach of contract claim (Count VI) and negligence claim (Count VII) based upon GEICO's purported failure to procure an insurance policy for the plaintiffs.

Under Pennsylvania law, plaintiffs may recover interest, punitive damages, court costs, and attorney's fees if an insurer acts in bad faith in evaluating or handling a claim. 42 Pa. C.S. § 8371. In order to show bad faith, a plaintiff must prove by clear and convincing evidence that: (1) the insurer lacked a reasonable basis for denying benefits; and (2) the insurer knew or recklessly disregarded its lack of reasonable basis. Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) (citing Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). A court should examine the factors that the insurer relied on in evaluating a claim to determine whether the insurer had a reasonable basis for denying benefits. Terletsky, 649 A.2d at 688–89. A bad faith claim is "fact specific" and depends upon the insured's conduct in connection with handling and evaluating a specific claim. Condio v. Erie Ins. Exch., 899 A.2d 1136, 1143 (Pa. Super. 2006).

To be sure, mere negligence or a lack of judgment does not constitute bad faith. Id. However, an insurer's reckless conduct can support a finding of bad faith. Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 751 (3d Cir. 1994). In making out a bad faith claim, the plaintiff is not required to prove that an insurer's delay in payment was motivated by any improper purpose. Klinger, 115 F.3d at 233. However, in order to survive a motion to dismiss, the plaintiff must provide supporting factual detail rather than mere legal conclusions. E.g., Smith v. State Farm Mut. Auto. Ins. Co., 506 F. App'x 133 (3d Cir. 2012); Canizares v. Hartford Ins. Co., Civ. A. No. 16-1465, 2016 WL 3027766, at *2 (E.D. Pa. May 27, 2016); Mozzo v. Progressive Ins. Co., Civ. A. No. 14-

5

5752, 2015 WL 56740, at *2–3 (E.D. Pa. Jan. 5, 2015); Atiyeh v. Nat'l Fire Ins. Co., 742 F. Supp. 2d 591, 599–600 (E.D. Pa. 2010).

The complaint sets forth only conclusory allegations regarding bad faith. These legal recitations are not factual and thus not entitled to the assumption of truth. There are no facts showing how GEICO lacked a reasonable basis for its decision to not pay UIM benefits. There are no facts detailing the actions GEICO or the plaintiffs took in pursuit of the claim. Nor are there any facts specifically describing what was unfair about GEICO's denial or refusal to pay UIM benefits. Accordingly, the complaint fails to state a plausible bad faith claim.

Similar bad faith claims have been dismissed for failure to state a claim. In Mozzo v. Progressive Insurance Co., the court dismissed a bad faith claim because the complaint only alleged barebones legal conclusions similar to those alleged here. 2015 WL 56740, at *3 (complaint alleged plaintiff "complied with . . . the investigation[,] . . . Defendant arbitrarily and capriciously failed to honor its obligations, . . . [and] Defendant has acted in bad faith in failing to honor Plaintiff's claim"). Similarly, in Atiyeh v. National Fire Insurance Company of Hartford, the court dismissed a bad faith claim because the plaintiff pled "merely conclusory legal statements" without any "factual support from which [the court could] conclude that defendant's actions in investigating and evaluating plaintiff's claim were unreasonable." 742 F. Supp. 2d at 599–600; see also Canizares, 2016 WL 3027766, at *2 (dismissing bad faith claim that failed to include any facts, such as when the claim was submitted to the insurance company, the handling of the claim by the insurer, or when the insurer responded to the insured's claim).

The bad faith claims here, and in Atiyeh, Mozzo, and Canizares, are much different than bad faith claims that have survived motions to dismiss. See, e.g., Davis v. Nationwide Mut. Ins. Co., --- F. Supp. 3d ----, 2017 WL 85388, at *3 (E.D. Pa. 2017) (denying motion to dismiss bad faith claim where the complaint set forth specific facts showing the low amount the insurer offered in light of the extent of the plaintiff's damages and extended unemployment); Padilla v. State Farm Mut. Auto. Ins. Co., 31 F. Supp. 3d 671, 676–77 (E.D. Pa. 2014) (denying motion to dismiss bad faith claim that specifically alleged the amount of months the insurer delayed in responding to the plaintiff's claim, the insurer ignored specific requests of the insured, and an unreasonably low settlement offer).[2]

For all these reasons, I will grant GEICO's motion to dismiss the plaintiffs' bad faith claims.

### B. *Failure to Procure Insurance*

Plaintiffs bring a breach of contract claim and negligence claim based upon GEICO's failure to procure an insurance policy for them. I will grant GEICO's motion to dismiss these claims.

In Count VI of their complaint, plaintiffs allege GEICO "breached its contractual undertaking to procure proper insurance coverage . . . in accordance with Plaintiff's [sic]

---

[2] Plaintiffs emphasize that they set forth various allegations in support of their bad faith claims. (Doc. No. 7-1 at 7–8). Plaintiffs are correct that they plead allegations in support of the bad faith claim. The problem with the allegations, however, is that they are conclusory and legal in nature—not factual. See Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Accordingly, these allegations are insufficient to withstand a motion to dismiss.

7

requests and needs expressed to Defendant on June 28, 2016." (Doc. No. 2-1 at 14 ¶ 59). In Count VII, the plaintiffs bring a negligence claim based upon the same failure to procure insurance. (Id. at 15).

This case presents a unique situation, in the context of insurance coverage, because the plaintiffs got into an accident the same day their vehicle was purchased. Plaintiffs allege they made a telephone call to GEICO, on June 28, 2016, before they purchased the car. (Doc. No. 2-1 at 5 ¶ 7 n.1). Plaintiffs made this call to ensure the car they were about to purchase would be covered. (Id.). However, plaintiffs concede they did not actually purchase the car until after they called GEICO. (Id.).

In some situations, Pennsylvania law recognizes claims for failure to procure insurance. Avondale Cut Rate, Inc. v. Assoc. Excess Underwriters, Inc., 178 A.2d 758, 760 (Pa. 1962). As expressed by the Pennsylvania Supreme Court:

> [W]here an insurance agent or broker promises, or gives some affirmative assurance, that he will procure or renew a policy of insurance under such circumstances as to lull the 'insured' into the belief that such insurance has been effected, the law will impose upon the broker or agent the obligation to perform the duty which he has thus assumed.

Id. (alteration in original) (quoting Luther v. Coal Operators Cas. Co., 108 A.2d 691, 692 (Pa. 1954), overruled on other grounds by Jarvis v. WCAB, 441 A.2d 1189, 1190–91 (Pa. 1981)); see also Al's Café, Inc v. Sanders Ins. Agency, 820 A.2d 745, 749 (Pa. Super. Ct. 2003) ("It has long been the law in this Commonwealth that an insurance agent or broker has a duty not to misrepresent the coverage procured" (citing Luther, 108 A.2d at 692)); St. Paul Surplus Lines Ins. Co. v. Fuhrman, Civ. A. No. 88-6209, 1989 WL 386, at *2 (E.D. Pa. Jan. 3, 1989) (recognizing breach of contract claim for failure to procure

8

insurance). Such a claim only arises, however, where the insurer's agent makes affirmative misrepresentations to undertake a duty to provide the insurance. Jarvis, 441 A.2d at 1190; Avondale, 178 A.2d at 760; Luther, 108 A.2d at 692–93.

Here, plaintiffs' procurement claims fail because they have not alleged any affirmative representations, to procure insurance, made by GEICO. On the contrary, the complaint merely reveals that a GEICO representative told plaintiffs that their insurance "quote would be stored electronically" and that they should contact GEICO once they actually purchased the vehicle and obtained its VIN number. This situation is much different than the cases involving valid procurement claims because, in those cases, the insurer made express representations that insurance would be procured. No such representations were made here. See Jarvis, 441 A.2d at 1190 (distinguishing successful procurement claims from unsuccessful procurement claims that involve no "no alleged affirmative assurances, promises, or statements, attributable to the carrier or its agent, that could have lulled the insured" into believing coverage would be provided). Consequently, it cannot be said that GEICO assumed any duty to provide coverage to plaintiffs.

Plaintiffs' casting of their procurement claim under both a negligence and breach of contract theory does not change this result. If an insurer fraudulently or negligently represents to a customer that they will be covered, there may be a negligence claim. Fuhrman, 1989 WL 386, at *2. However, here, there is no allegation that anyone from GEICO ever represented to the plaintiffs that they would be covered. Plaintiffs allege they contacted GEICO to ensure the Dodge Challenger would be covered once they "took possession" of the car. (Doc. No. 2-1 at 5 ¶ 7 n.1). However, GEICO did not represent to

9

plaintiffs that this would happen. Again, GEICO simply told plaintiffs they would save the quote (*i.e.*, an estimate) in their system and that the plaintiffs could contact GEICO after they actually bought the Dodge Challenger. It would be a different story had GEICO stated they would procure coverage immediately for the plaintiffs. But they did not. Nor did GEICO tell the plaintiffs that coverage would begin once the plaintiffs took possession of the car. No duty was undertaken and no standard of care breached.[3]

Accordingly, I will grant the motion to dismiss the plaintiffs' claims that are based upon GEICO's failure to procure insurance.[4]

### C.     Breach of Fiduciary Duty

GEICO moves to dismiss or strike references plaintiffs make to a "fiduciary duty" in their breach of contract claims.

GEICO argues that plaintiffs' reference to a "fiduciary duty" in the breach of contract claims is improper. Plaintiffs do not disagree with GEICO on this legal point. Indeed, plaintiffs agree to strike all allegations of a "fiduciary" duty from their breach of contract claims. (Doc. No. 7-1 at 5–6). Accordingly, I will grant GEICO's motion to

---

[3] Plaintiffs are not able to point to any case law imposing a duty upon insurers to procure insurance for inquiring customers before the object to be insured is actually purchased. Most of the cases involving procurement claims address situations where the insured is seeking a continuation of coverage from their insurer for an object that has already been insured. In this case, by contrast, it would be unjust to impose a duty upon GEICO to procure insurance for the plaintiffs merely because they inquired about a possible quote before purchasing the vehicle they sought to insure.

[4] Notably, GEICO does not move to dismiss plaintiffs' ordinary breach of contract claims (Counts I, II, and III). GEICO only moves to dismiss the breach of contract claim based upon failure to procure insurance (Count VI). Therefore, plaintiffs' ordinary breach of contract claims will not be dismissed.

dismiss and strike the allegations of a "fiduciary" duty in Counts I, II, and III of the complaint.

## V. CONCLUSION

For all the foregoing reasons, defendant's motion to dismiss is granted. I will allow plaintiffs leave to amend their bad faith claims (Counts IV and V) and procurement claims (Counts VI and VII) by filing an amended complaint within twenty-one (21) days of the date of the accompanying Order. I will strike the allegations of fiduciary duty found in Counts I, II, and III with prejudice.

An appropriate Order follows.